## CHICAGO, B. & Q. R. CO. v. GILES.

(District Court, D. Colorado.   October 12, 1916.)

No. 6552.

1. COMMERCE ⊜⟶61(1)—INTOXICATING LIQUORS—STATE REGULATION.
    Webb-Kenyon Act (Act March 1, 1913, c. 90, 37 Stat. 699 [Comp. St. 1913, § 8739]), prohibiting in substance the shipment in interstate commerce of intoxicating liquor into any state which is intended by any person interested therein to be received, possessed, sold, or in any manner used either in the original package or otherwise in violation of the law of the state, does not warrant Prohibition Act Colo. (Laws 1915, p. 275) § 10, declaring that it shall be unlawful for any person, association, or corporation, or for any carrier, to ship or knowingly carry any intoxicating liquor to any point in the state, or from one point to another within the state without marking conspicuously on the package the words, "This Package Contains Intoxicating Liquor"; the Webb-Kenyon Act merely prohibiting the shipment of intoxicants intended to be used in violation of the state law, but not allowing the states to regulate that branch of interstate commerce.

    [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 81, 89; Dec. Dig. ⊜⟶61(1).]

2. COMMERCE ⊜⟶14—INTOXICATING LIQUORS—SHIPMENT—INTERSTATE COMMERCE—POWER OF STATES.
    By Act March 4, 1909, c. 321, § 240, 35 Stat. 1137, now embodied in the Criminal Code (Comp. St. 1913, § 10410), making criminal the shipment in interstate commerce of intoxicating liquor unless the package be labeled so as to show the name of the consignee and the nature of the contents, Congress has expressly exercised its power to regulate interstate commerce shipments, and therefore state regulations such as that embodied in Prohibition Act Colo. § 10, as to the marking of such packages, are invalid.

    [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 30, 92; Dec. Dig. ⊜⟶14.]

3. COMMERCE ⊜⟶14—INTERSTATE COMMERCE—INTOXICATING LIQUORS—EXCLUSIVE POWER OF CONGRESS.
    In view of the exclusive power of Congress over interstate commerce, and the fact that the interstate commerce shipment of intoxicating liquors requires uniformity of regulation, the states are without power, as was attempted by Prohibition Act Colo. § 10, to regulate the marking of shipments of intoxicants.

    [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 30, 92; Dec. Dig. ⊜⟶14.]

---

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Replevin by the Chicago, Burlington & Quincy Railroad Company, a corporation, against D. R. Giles. On demurrer to the complaint. Demurrer overruled.

T. M. Stuart, Jr., of Denver, Colo., for plaintiff.
Wendell Stephens, Asst. Atty. Gen., for defendant.

LEWIS, District Judge. This action of replevin was brought to recover the possession of six interstate shipments of intoxicating liquor. The plaintiff is the common carrier that brought them into Colorado, and while it still held the packages containing the liquor for delivery to the consignees, the defendant seized them and took them away claiming the right to do so under the state Prohibition Act, Session Laws of Colorado 1915, p. 275. That act prohibits and makes penal the manufacture for sale or gift, the importation into this state for sale or gift and the keeping for sale, barter or trade of any intoxicating liquor, except for the restricted purposes named in the act. It also prohibits the carrier from making delivery until the consignee has subscribed and is sworn to the truthfulness of a prescribed form of statement, in which he is required to state whether the liquor is for personal, medicinal or sacramental use.

The particular part of the act which was not complied with and under which the defendant claimed the right to make the seizure is section 10 as follows:

"It shall be unlawful for any person, association or corporation, or for any common or special carrier, to ship or knowingly carry any intoxicating liquor to any point in this state, or from one point to another within this state, without marking conspicuously on the package containing such liquor, where it can be plainly seen and read, the words 'This Package Contains Intoxicating Liquor.'" Laws Colo. 1915, p. 278.

The complaint discloses that none of the packages was marked with the particular inscription; and for that reason alone a demurrer was lodged against it. The issue of law thus presented brings under consideration the interstate commerce clause of the Constitution as heretofore construed, the Webb-Kenyon Act, 37 Stat. 699, and section 240 of the Act of March 4, 1909, 35 Stat. 1088 at 1137.

[1] It would be a waste of effort to attempt to demonstrate, as has been so many times done, that all of the packages were beyond the reach of the power of the state at the time of the seizure; and for that purpose the interstate commerce clause and the uniform construction given to it would be all-sufficient, putting out of view for the time being the Webb-Kenyon Act. R. R. Co. v. Brewing Co., 223 U. S. 70, 32 Sup. Ct. 189, 56 L. Ed. 355. So the inquiry comes to the question: Did that act let in the power of the state at the time the defendant as its police officer assumed to assert and exercise it? That act in substance provides that the shipment in interstate commerce of intoxicating liquor into any state which is intended by any person interested therein to be received, possessed, sold, or in any manner used either in the original package or otherwise in violation of any law of such state, is prohibited. When the plain meaning of the act as evidenced by a fair reading of its words is kept in mind it seems impossible to

find a reasonable basis for the affirmative contention. The only argument made for that purpose was that the failure of the consignor to place on each package the particular inscription required by the state act evinced a purpose on the part of the consignee to receive the liquor in violation of the state act; and this moreover, in the face of an allegation in the complaint that none of the consignees or any person interested in the shipments intended to receive, possess, sell or in any manner use the liquor in violation of state law, but each would have used the same in compliance therewith.

The facts disclosed by the complaint are no stronger in support of the contention that the Webb-Kenyon Act applies than they were in Express Co. v. Kentucky, 238 U. S. 190, 35 Sup. Ct. 824, 59 L. Ed. 1267, L. R. A. 1916C, 273, Ann. Cas. 1915D, 1167, where it was expressly held that the shipment was not prohibited by that act. We therefore put that act to the side as having no application whatever to the issue raised by the demurrer.

The inquiry as to the validity of that act has not been raised or considered. We have assumed its constitutionality. When it comes in question it may be hard to find the grant of power from which it emanated. Certainly not from the commerce clause, because it is manifestly not a regulation of interstate commerce by Congress, nor does it exclude intoxicants from interstate traffic as inherently unfit, nor is it in effect a declaration that Congress declines to exercise its constitutional power and thus leave the subject for the time to the control of the states. It was written into the statute only after executive repudiation.

[2, 3] But there is a more serious objection to section 10 of the state Prohibition Act. Section 240 of the Act of March 4, 1909, supra, now embodied in the Criminal Code, prohibits and makes criminal the shipment in interstate commerce of intoxicating liquor "unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein," and further subjects such liquor to forfeiture to the United States. It is thus evident that in so far as markings and inscriptions are required on packages containing intoxicants, Congress has expressly exercised its power to regulate the interstate shipment, and has furthermore made forfeiture to the United States of the goods shipped a part of the penalty for non-compliance. In that respect it has occupied the whole field, and by necessary implication has excluded others therefrom; as much so as it could have done by express prohibition. The state act purports to make a failure to comply with any of its provisions a criminal offense, and provides a forfeiture and destruction of the liquor. Thus the same subject is completely covered and dealt with by the two jurisdictions, federal and state; and it would be difficult to conceive a condition of more certain antagonism. Each asserts the right to require and compel the marking of the package as it may direct and each imposes a forfeiture for non-compliance. The two cannot co-exist and the one possessing paramount authority over the subject matter must prevail and the other give way. At the time the state act was passed the

field was not open for it to enter, as in Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182.

Furthermore, there are some subjects within the constitutional power granted to Congress which from their nature can only be regulated by it, and from which state action is excluded by reason of the purpose of the grant. Minnesota Rate Cases, 230 U. S. 352, 399, 33 Sup. Ct. 729, 57 L. Ed. 1151, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. Is the subject matter of shipment under consideration of such nature and general interest as to require uniformity of treatment by federal authority alone, and hence excluded by the constitutional grant from state power? In view of the necessary restrictions which Congress has placed on the handling and use of intoxicating liquor from an early day as a means to the exercise and execution of one of its powers, it may well be concluded that the subject was never one for state action. It is a question of power. If the power exist, the state is free to determine in what the marking on the package shall consist; which is but to concede a state right to confuse the execution of both federal powers.

The conclusion is two-fold: First, the subject dealt with required uniformity of regulation, and is therefore beyond the reach of state power; and, second, waiving the foregoing conclusion, section 240, without more, excludes state action.

It follows that section 10 of the state act is void, and as it is the sole basis on which the demurrer is rested, the demurrer will be overruled.

It is so ordered.